AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>SUBJECT VEHICLE: A 2013 Silver Toyota Venza,<br>License Plate BRR6772, VIN<br>4T3BA3BB1DU035380. | )<br>)<br>)<br>)<br>)<br>)   Case No.  MJ24-059 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SUBJECT VEHICLE: A 2013 Silver Toyota Venza, License Plate BRR6772, VIN 4T3BA3BB1DU035380.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1112(a), 1153 | Involuntary Manslaughter |
| 18 U.S.C. §§ 113(a)(6), 1153 | Assault Resulting in Serious Bodily Injury |

The application is based on these facts:

☑ See Affidavit of Special Agent Natalie J. Leavitt, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or ☐ telephonically recorded.

_____
*Applicant's signature*

Natalie J. Leavitt, Special Agent (FBI)
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____02/01/2024_____

_____
*Judge's signature*

City and state:  Seattle, Washington

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

USAO: 2024R00094

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AFFIDAVIT**

STATE OF WASHINGTON )
                     )   ss
COUNTY OF  WHATCOM  )

I, NATALIE J. LEAVITT, a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND PURPOSE OF AFFIDAVIT**

1.     I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the SUBJECT VEHICLE, which is currently in law enforcement possession, and the forensic examination of the stored electronic data, information, images, and related digital storage, and/or vehicle diagnostic data from the SUBJECT VEHICLE's infotainment and telematic systems, as described in Attachment B.

2.     This Affidavit and warrant are being presented electronically pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

3.     The FBI is investigating whether ALYXANDRA ELIZABETH BILLY ("BILLY") violated Title 18, United States Code, Sections 1112(a) and 1153 (Involuntary Manslaughter) and Title 18, United States Code, Sections 113(a)(6) and 1153 (Assault Resulting in Serious Bodily Injury). As described herein, there is probable cause to believe that the SUBJECT VEHICLE contains evidence of these crimes.

**IDENTIFICATION OF THE SUBJECT DEVICE TO BE EXAMINED**

4.     A 2013 Silver Toyota Venza, Washington License Plate BRR6772, VIN 4T3BA3BB1DU035380. The vehicle was towed from 3458 Grove Road, following a report that the daughter of the registered owner, Christopher Hadrath, had been in a vehicle collision on Lummi Shore Road the previous night. The right side of the vehicle has sustained substantial damage. Images were taken of the vehicle, and evidence was collected previous to the car being transported. The SUBJECT VEHICLE was secured by

Affidavit of Special Agent Natalie J. Leavitt- 1
USAO # 2024R00094

Whatcom County Sheriff's Office (WCSO) in an evidence bay on January 10, 2024 for purposes of the preservation of evidence.

5.     The SUBJECT VEHICLE is currently in the custody of WCSO, and it is further described in Attachment A to this Affidavit.

6.     Based on the SUBJEC VEHICLE's VIN, it is believed to be equipped with an infotainment and possibly a telematics system as well. Electronic data, information, and images stored on these systems may be successfully extracted from the SUBJECT VEHICLE using proprietary hardware and software.

7.     The requested warrant would authorize the forensic examination of the SUBJECT VEHICLE for the purpose of identifying physical evidence of a vehicle collision, as well as electronic data, information, and images from the infotainment and telematic systems described in Attachment B. I seek this warrant so that an examination of the SUBJECT VEHICLE will comply with the Fourth Amendment and other applicable laws.

## AFFIANT BACKGROUND

8.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since 2022. I am currently assigned to the Bellingham Resident Agency of the Seattle Division and the FBI's Northwestern Washington Safe Trails Task Force ("NWSTTF"). My primary responsibilities as a Special Agent include investigations involving violent crimes and other federal crimes on the Indian reservations in Northwest Washington. As a Special Agent for the FBI, I have participated in numerous investigations including, but not limited to assault, theft and embezzlement, sexual abuse, and various other criminal violations. During these investigations, I have executed and assisted in the execution of both search and arrest warrants. Prior to becoming a Special Agent, I spent over three years in the accounting industry working as an accountant in the financial reporting department for a private company.  I am also a licensed Certified Public Accountant.

Affidavit of Special Agent Natalie J. Leavitt- 2
USAO # 2024R00094

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9.      The facts set forth in this Affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

10.      Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Rather, I have included only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits and instrumentalities of the above-described violation will be found in the SUBJECT VEHICLE, as described in Attachment A.

## SUMMARY OF PROBABLE CAUSE

11.      On the morning of January 10, 2024, the custodian at the Lummi Cemetery called 911 after observing debris near the cemetery driveway, as well as what appeared to be a mannequin or a human body in the ditch. Officers from Lummi Nation Police Department ("LNPD") responded to the scene and determined that the female lying in the ditch was deceased. She was later identified as Miranda Ziesing. LNPD officers reached out to the Washington State Patrol ("WSP") and the Whatcom County Sheriff's Office ("WCSO") to assist with the investigation. WSP and WCSO officers collected evidence from the scene including vehicle debris and personal belongings on the ground near Ziesing's body. The Whatcom County Medical Examiner's Office also responded to the scene and collected Ziesing's body for a postmortem examination to determine the cause, manner and circumstances surrounding her death.

12.      At approximately 10:27 am on January 10, 2024, Carrie Berg called 911 and reported that her daughter, Hanna Hadrath, was involved in a vehicle collision on Lummi Shore Road the previous night. Hadrath told Berg that a friend was driving at the

time of the collision. Berg described the vehicle, which is registered to Hanna Hadrath's father, Christopher Hadrath, as a silver, 2013 Toyota Venza.

13.     Officers responded to Berg's residence and saw a 2013 Toyota Venza wagon, license plate WA BRR6772, the SUBJECT VEHICLE, parked outside. There was obvious damage to the right front passenger corner. The vehicle appeared to match the color of some of the vehicle debris recovered at the scene. Pieces were missing from the passenger side front bumper. The passenger front headlight was smashed, and the fog light was missing. The passenger side of the hood was bent, and the passenger front fender showed heavy contact damage. The inner fender liner was missing from the passenger side front wheel well. The passenger side rear view mirror was missing, but the base post of the mirror was present. There was a dent on the top of the passenger side of the hood where it appeared something had scraped along the hood. The windshield had contact damage just above the wiper, and spider cracking spreading outward. There was a long black hair stuck on the mirror base of the passenger front door and a reddish fluid near the tire well of the passenger front wheel. The hair and swabs of the reddish fluid were collected as evidence. A tow truck transported the SUBJECT VEHICLE to the WCSO to be secured as evidence.

14.     WCSO deputies spoke with Hannah Hadrath who showed them Facebook Messenger messages that she exchanged with BILLY on her cell phone, She provided them her PIN ("Personal Identification Number") code to access the device. WCSO deputies collected the cell phone and booked it into evidence.

15.     Hadrath agreed to be interviewed at the WCSO. The interview was audio and video recorded. Hadrath was advised of her rights and signed a waiver. She provided the following information.

16.     On the night in question, Hadrath drove a Toyota Venza and picked up her friend, BILLY, at her house. They drove down to the water near the Lummi Ferry. They smoked a cigarette and went to get alcohol. Hadrath drove with BILLY to the "260"

Affidavit of Special Agent Natalie J. Leavitt- 4
USAO # 2024R00094

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

liquor store, which I understand is a reference to the Lummi Bay Market at Exit 260 off of I-5. BILLY went inside and bought a half gallon of vodka and a 4 Loko. They drove back to the water near the Lummi Ferry, where they sat in the car and took shots of vodka. At some point, they went to pick up Hadrath's friend, Willy Owdings. The three of them went back down to the water. Owdings brought a joint of marijuana with him and three of them smoked it in her car.

17.     Hadrath drove Owdings back to his house and returned to the water with BILLY. They continued to take shots of vodka. BILLY talked about not driving much, so Hadrath let BILLY drive her vehicle while she sat in the passenger seat. They drove for approximately 30 minutes. Once BILLY started driving, Hadrath began to drink more and did not remember much afterwards because of her level of intoxication.

18.     While BILLY was driving along Lummi Shore Drive, the vehicle struck an unknown object. Hadrath heard a loud noise, but she did not see anything due to the darkness. She felt the impact from the collision, which caused her to sway sideways. BILLY asked Hadrath if they had hit a deer. Hadrath thought they struck a dog or mailbox. BILLY did not stop and continued to drive to her house. Hadrath and BILLY got out of the vehicle looked at the vehicle and saw that it had sustained substantial damage. Hadrath did not remember anything else once they got to BILLY's house. Hadrath woke up around 7:30 am and found her car keys in the pocket of BILLY's basketball shorts. The empty bottle of vodka they had been drinking from was on BILLY's bedroom floor.

19.     Later that morning, WCSO deputies responded to BILLY's residence at 2499 Mackenzie Road. BILLY was read her rights. She stated she understood them and agreed to be interviewed at the WCSO. BILLY had a cell phone on her person, a black Android Samsung cell phone. BILLY provided her PIN code to access the device. WCSO deputies collected cell phone and booked it into evidence.

20.     BILLY asked if she was going to jail and the WCSO deputy advised her that she was going to the station to be interviewed. . said "I'm gonna say the same thing. I thought I hit a deer." BILLY then mentioned that her arm was hurting and she cut herself. She was bleeding and didn't want to get blood in the vehicle. After the WCSO deputy stopped the vehicle and saw that BILLY's arms were bleeding and flayed open, medics were called. BILLY explained that she had not cut herself in three years, but she did so again today. When asked why, BILLY stated "I thought I hit a deer and they told me I hit a person. And so this like triggered me." Medics arrived shortly thereafter and transported her to St. Joseph's Hospital. Later that day, FBI agents responded to the hospital and conducted an audio-recorded interview of BILLY. After BILLY was read her rights and consented to the interview, she provided the following information.

21.     Hadrath picked BILLY up at her residence around 5:00 pm the previous evening. They hung out at Lummi Shore beach for about an hour. Hadrath and BILLY went and got vodka at the "260 store" around 6:00 pm. Hadrath and BILLY later picked Hadrath's friend, Willy Owdings. They talked and smoked some weed for another hour or so. BILLY thinks Owdings left them at approximately 8:00 pm.

22.     BILLY had taken two shots before driving Harath's vehicle. BILLY hit what she thought was a deer. BILLY tried to slow down, but Hadrath told her to keep driving. BILLY and Hadrath went back to BILLY's house and fell asleep. When BILLY woke up the next day, Hadrath was already gone. She later received a message from Hadrath that they had hit a person.

23.     LNPD officers responded to the hospital and executed tribal search warrant to obtain samples of BILLY's blood for toxicological analysis. After BILLY was discharged from the hospital, she was arrested on tribal charges of Vehicular Homicide and DUI and transported to Whatcom County Jail.

24.     On January 12, 2024, the Whatcom County Chief Medical Examiner conducted a forensic examination of Ziesing's body. The examiner noted that Ziesing

sustained the following injuries, which were consistent with her being hit by a motor vehicle: a broken right femur, broken left foot, broken left scapula, broken sacrum, and a basilar skull fracture. A urinalysis was also conducted and tested presumptive positive for methadone, amphetamine, methamphetamine, fentanyl, and carfentanyl.

25.     Surveillance was also collected from various locations, including Ring camera footage from BILLY's neighbor across the street, footage of the beach access area on Lummi Shore, and the Lummi Bay Market at Exit 260 where BILLY purchased alcohol on the night in question. The following timeline from January 9, 2024 through January 10, 2024 was determined through analysis of the footage.

| TIME | LOCATION |
|------|----------|
| 5:41 pm | BILLY purchased alcohol at Lummi Bay Market-260 Store, 4839 Rural Ave |
| 6:19-6:50 pm | Silver vehicle parked at beach access |
| 7:37-7:45 pm | Silver vehicle parked at beach access |
| 8:08-8:16 pm | Silver vehicle parked at beach access |
| 9:16-9:41 pm | Silver vehicle parked at residence, 2502 Mackenzie Road |
| 10:31 pm-7:25 am | Silver vehicle parked at residence, 2502 Mackenzie Road |

26.     I have confirmed that BILLY is an Indian: she has an Indian blood quantum of 83/128ths and is an enrolled member of the Swinomish Indian Tribal Community, a federally recognized Indian tribe. I have also confirmed that the location where the collision occurred lies within the exterior boundaries of the Lummi Indian Reservation.

## TECHNICAL BACKGROUND REGARDING THE VEHICLE AND ITS INFOTAINMENT AND TELEMATICS SYSTEMS

27.     Based on my training and experience, as well as discussions with other experienced law enforcement officers and witnesses, I have learned that:

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. Many modern motor vehicles are equipped with sensors, cameras,[1] transmitters, and electronic control units (ECUs)[2] to monitor and manage vehicle operations, track vehicle movement, and exchange information with other vehicles and infrastructure.[3] These systems also enable motor vehicles to interface with various types of mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like. To perform these computing functions, modern motor vehicles collect, process, and store significant volumes of data.

b. Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Telematics Control Unit and the Infotainment Control Unit. These systems typically retain large amounts of user data within the vehicle.

---

[1]   As of 2018, the US National Highway Safety Transportation Agency requires new motor vehicles sold in the United States to have backup cameras installed by the manufacturer.

[2]   "ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

[3]   The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are called event data recorders (EDRs) or crash data recorders. These black box recorders can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. In 2006, the US National Highway Traffic Safety Administration (NHTSA) adopted regulations requiring EDRs to uniformly collect certain crash data to assist crash investigators with accident reconstruction efforts. In 2012, NHTSA proposed requiring manufacturers to install EDRs in all new cars and trucks, but in 2019, the NHTSA withdrew the proposal because automakers have voluntarily installed the devices in nearly all vehicles.

c. A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for example, Global Positioning System (GPS) navigation, video players, music streaming, voice calling, texting, and traffic data. Many systems enable talking hands-free with Bluetooth connectivity, listening to music, watching videos, or pulling up a mapped route to a destination. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

d. A vehicle's telematics system typically collects and stores diagnostic data from various systems (other ECUs) within the vehicle, including historical navigation points, speed, and event data. Historical event data may include information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

e. The main difference between the infotainment and telematics systems is that the infotainment system is about entertainment for the occupants of the vehicle, and the telematics system is for collecting and reporting (transmitting) information—such as vehicle use data, maintenance requirements, and automotive servicing—about the vehicle. Typical telematics data may include turn-by-turn navigation, remote access, emergency calling, and maintenance notifications. Examples of vehicle telematics systems include General Motors' OnStar, BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined

infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

f.  The data generated, collected, transmitted, and retained by motor vehicles can provide valuable information in law enforcement investigations of crimes. For example, many infotainment systems support the importation of content and other data information from a particular user's mobile device. Such data may include content that may provide attribution to particular user(s), including mobile device identifiers, wireless telephone numbers, user account details, passwords, user voice profiles, contact lists, call logs, text messages, pictures, e-mail, videos, web history, GPS coordinates, and other historical navigation information.

g.  I am aware that the computers (ECUs) within many motor vehicles store data for prolonged periods of time. Furthermore, even after a previously-connected mobile device is removed from the physical vehicle, data may remain within the digital storage of the system. Such stored data can be used to identify locations, victims, witnesses, associates, and co-conspirators and may include communications and images of criminal activity. In sum, a forensic examination of a motor vehicle's infotainment and telematics systems may reveal the vehicle's GPS location information, movements, operations, and user data at critical moments before, during, and after the commission of a crime.

h.  To complete a forensic extraction from the SUBJECT VEHICLE, it may be necessary, temporarily, to remove trim and other components of the Vehicle to access the information subject to search. It may also be necessary to repair the device, replace the screen, reconnect wires, and replace batteries. It may be necessary to employ advanced forensic

Affidavit of Special Agent Natalie J. Leavitt- 10
USAO # 2024R00094

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

processes to bypass locked display screens and other data access restrictions. Advanced processes may include potentially destructive forensic techniques used to remove memory chips from computers and other electronic storage containers that may be found within the Vehicle. In the event that potentially destructive processes are required to perform this extraction, parts of the Vehicle may be destroyed and rendered useless.

i.    Furthermore, it may be necessary to return to the SUBJECT VEHICLE and reconnect the infotainment and telematics systems to the Vehicle's power source to perform the extraction using forensic software. This is because there are various computer networks working simultaneously when a vehicle is powered on, and in some vehicles, the infotainment and telematics systems require the other networks to work in tandem to complete the data extraction.

j.    The requested warrant authorizes a later review of the media and information seized or copied from the Vehicle, which review may continue past the date required for execution of the warrant.

28.    For these reasons, I believe probable cause exists to search the digital storage media associated with the above-described vehicle and seize evidence of the above crimes for the date range beginning on January 9, 2024 to January 10, 2024, including:

a.    Live and deleted user attribution data including, but not limited to, user accounts, e-mail accounts, passwords, PIN codes, patterns, methods of payment, account names, user names, screen names, remote data storage accounts, documents, files, metadata, log files, user voice profiles and other biometric identifiers or any other information and evidence that may demonstrate attribution to a particular user or users;

b.      Live and deleted historical event data to include, but not limited to, when the headlights were on or off, when doors were opened or closed, when gears were changed, when brakes were applied, and when connections and disconnections were made to other devices such as Bluetooth, USB, media cards, and Wi-Fi.

c.      Live and deleted historical event data to include, but not limited to, logged connections or disconnections to other devices and the identifying information of those devices including associated phone number(s), unique identifier numbers, system assigned names, user assigned names, IMEI information, and MAC addresses.

d.      Live and deleted location information, historical navigation data tracks, routes, and waypoints, GPS fixes, favorites, past journeys, trip logs, and user entered data, Latitude, Longitude, and Altitude coordinates, and related dates and times;

e.      Live and deleted contact lists, call logs, text messages and multimedia messages (SMS and MMS messages), e-mails, chats, video conference communication data, contact information, installed application information including their content and any other information which can be used to identify potentially associated persons;

f.      Live and deleted passwords, password files, PIN codes, encryption codes, or other information necessary to access the digital device or data stored on the digital device such as hidden file applications;

g.      Live and deleted web browser history, web browser bookmarks, temporary Internet files, cookies, searched items, downloaded and uploaded files, social networking websites or applications;

h.      Live and deleted data stored on removable media such as Subscriber Identity Modules (SIM cards), flash memory storage devices such as Secure Digital (SD) and Micro SD media cards and any associated wireless devices (Bluetooth, Wi-Fi, or other technology);

Affidavit of Special Agent Natalie J. Leavitt- 12
USAO # 2024R00094

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    29.    I am also requesting that the executing law enforcement officer(s) may enlist

2  the aid of a law enforcement computer forensic laboratory and/or certified digital evidence

3  examiner(s) in the searching, viewing, photographing, recording, copying, forensic

4  imagining, and analysis of any and all of the information described.

5    30.    Because this warrant seeks only permission to examine a vehicle already in

6  law enforcement's possession, the execution of this warrant does not involve the physical

7  intrusion onto any premises. Consequently, I submit there is reasonable cause for the

8  Court to authorize execution of the warrant at any time in the day or night.

9                                **CONCLUSION**

10    31.    Based on the foregoing, I submit there is probable cause for a search

11  warrant authorizing the examination of the SUBJECT VEHICLE, as described in

12  Attachment A, for evidence and/or fruits and instrumentalities of the commission of the

13  above listed crime, as set forth in Attachment B.

14

15

16                                NATALIE J. LEAVITT
                                  Special Agent
17                                Federal Bureau of Investigation

18

19    The above-named agent provided a sworn statement attesting to the truth of the

20  contents of the foregoing affidavit by telephone on this **1ˢᵗ** day of February 2024.

21

22

23

24                                HON. MICHELLE L. PETERSON
                                  United States Magistrate Judge
25

26

27

28

Affidavit of Special Agent Natalie J. Leavitt- 13
USAO # 2024R00094

**ATTACHMENT A**
**Description of Property to Be Searched**

A 2013 Silver Toyota Venza, License Plate BRR6772, VIN 4T3BA3BB1DU035380, the SUBJECT VEHICLE. The SUBJECT VEHICLE was towed from 3458 Grove Road, following a report that the vehicle owner's daughter had been in a vehicle collision on Lummi Shore Road the previous night. There was clear damage to the right side of the vehicle. Images were taken of the vehicle, and evidence was collected previous to the car being transported. The SUBJECT VEHICLE was secured by Whatcom County Sheriff's Office (WCSO) in an evidence bay on January 10, 2024 for purposes of the preservation of evidence.

This warrant authorizes, inter alia, the forensic examination of the SUBJECT VEHICLE's infotainment and telematics systems for the period beginning on January 10, 2024 and ending on January 11, 2024, for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT A - 1
USAO # 2024R00094

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Subject Vehicle**





ATTACHMENT A - 2
USAO # 2024R00094

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT B**
**Description of Items to be Searched for and Seized**

**This warrant authorizes the government to search for and seize:**

1.      Evidence, instrumentalities, and/or fruits of the violation of Title 18, United States Code, Sections 1112(a) and 1153 (Involuntary Manslaughter) and Title 18, United States Code, Sections 113(a)(6) and 1153 (Assault Resulting in Serious Bodily Injury) including but not limited to the following items:

A.  Evidence of consumed alcohol or controlled substances;

B.  Evidence of vehicle damage and collision;

C.  Stored electronic data, information, images, and related digital storage, and/or vehicle diagnostic data from electronic systems within the SUBJECT VEHICLE, for the period beginning on January 10, 2024 and ending January 11, 2024, including, but not limited to:

    i.   unique device identifiers;

    ii.   media files;

    iii.   call logs;

    iv.   contacts;

    v.   SMS;

    vi.   Bluetooth connections;

    vii.   USB connections;

    viii.   voice commands;

    ix.   voice recordings;

    x.   voice calling;

    xi.   web browser history;

    xii.   Wi-Fi connections;

ATTACHMENT B - 1
USAO # 2024R00094

xiii.   speech recognition;

xiv.   time updates;

xv.   track logs;

xvi.   traction events;

xvii.   traffic updates;

xviii.   stop/start log;

xix.   GPS warnings;

xx.   hard acceleration;

xxi.   hard braking;

xxii.   light status;

xxiii.   odometer reading;

xxiv.   gear shifts;

xxv.   historical navigation data;

xxvi.   historical speed data;

xxvii.   historical event data; and

xxviii.   data streaming services and related content.

2.      This warrant further authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data

1   to the custody and control of attorneys for the government and their support staff for their

2   independent review.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 3
USAO # 2024R00094

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970